## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE
FARM FIRE AND CASUALTY COMPANY,

Plaintiffs,

Case No. 8: 17 cv 389 33 AEP

vs.

PERSONAL INJURY SOLUTIONS, LLC,
n/k/a ORTHOPEDIC ASSOCIATES OF
TAMPA BAY, LLC, and CONRAD D.
TAMEA, JR.,

Defendants.

_____/

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("State

Farm Mutual"), and STATE FARM FIRE AND CASUALTY COMPANY ("State Farm Fire"),

by counsel, sue Defendants, PERSONAL INJURY SOLUTIONS, LLC, n/k/a ORTHOPEDIC

ASSOCIATES OF TAMPA BAY, LLC ("Personal Injury Solutions"), and CONRAD D.

TAMEA, JR. ("Tamea") (Personal Injury Solutions and Tamea sometimes collectively referred

to as "Defendants"), and state as follows:

### Common Allegations

1.       Pursuant to 28 U.S.C. § 1332(a)(1), this Court has jurisdiction over this action

because it is between citizens of different states, and the amount in controversy exceeds

$75,000.00 exclusive of interest, costs, and attorneys' fees.  As explained further in the

allegations below: (a) both State Farm Mutual and State Farm Fire are Illinois corporations; (b)

Defendant Personal Injury Solutions is a Florida Limited Liability Company domiciled in



TRA-41844
$400

1

Florida; (c) Defendant Tamea is an individual residing in Florida; and (d) the amount in controversy in this action exceeds $190,000.00. Thus, all requirements for this Court to exercise its diversity jurisdiction under 28 U.S.C. § 1332(a)(1) are satisfied.

2.      Pursuant to 28 U.S.C. § 1391(a), venue is proper in this district because Defendants are located in this district, and a substantial portion of the actions giving rise to the claims herein occurred in Tampa, Florida.

3.      Plaintiff State Farm Mutual is an Illinois corporation with its principal place of business in Illinois, which issues automobile insurance policies and otherwise conducts business in Florida with proper authority to do so.

4.      State Farm Mutual has incurred damages due to Defendants' actions which exceed $190,000.00. Pursuant to 28 U.S.C. § 1332(a), this Court has original jurisdiction over the claims of State Farm Mutual against the Defendants.

5.      Plaintiff State Farm Fire is an Illinois corporation with its principal place of business in Illinois, which issues automobile insurance policies and otherwise conducts business in Florida with proper authority to do so.

6.      State Farm Fire has incurred damages due to Defendants' actions which exceed $7,000.00. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the claims of State Farm Fire against the Defendants.

7.      Defendant Personal Injury Solutions: (a) is a Florida Limited Liability Company organized pursuant to the laws of the State of Florida, (b) is actively engaged in the operation of a medical practice with its principal place of business allegedly located in St. Petersburg, Florida, (c) maintains offices in Hillsborough County, Florida, and (d) is a medical facility operating under a Florida Agency for Healthcare Administration license exemption (AHCA number 11846,

exemption number 11356).

8.      Defendant Tamea is a Florida resident and medical doctor.

9.      Tamea controls the operations of Personal Injury Solutions (as more specifically described below) by virtue of the fact that he shares ownership with his wife, Judy Tamea, and he is Personal Injury Solution's sole medical doctor. Tamea engaged in all of his actions described herein as an agent of Personal Injury Solutions and within the principal/agent relationship between Personal Injury Solutions and Tamea.

## Summary of PIP Statute and Defendants' Scheme

10.     The State of Florida requires all drivers to maintain personal injury protection ("PIP") insurance coverage. Section 627.736, Florida Statutes, establishes the guidelines, requirements, and regulations for required PIP policies, submissions of claims under such policies, and exclusions from policy coverage. Under section 627.736, a person involved in an automobile accident may be entitled to up to $10,000.00 worth of benefits in the event that he or she is injured in the accident, irrespective of whether or not that person is at fault.

11.     Among other things, section 627.736, Florida Statutes, prohibits medical providers from submitting an inflated claim for PIP benefits, from separately billing for multiple services during an office visit when the medical encounter should be billed as one service, and also from submitting false or misleading statements in medical bills or reports for the purpose of seeking reimbursement. A PIP insurer is not required to pay any portion of a claim submitted by a medical provider when the claim contains a false or misleading statement.

12.     Additionally, section 400.93(1), Florida Statutes, requires that a person or entity that provides or distributes home medical equipment to the public must secure proper licensure from the State of Florida. Section 400.93, Florida Statutes, provides that distributing home

3

medical equipment without the proper license is a violation of the Florida Unfair and Deceptive Trade Practices Act.

13.    As set forth in more detail below, Defendants have (1) improperly billed State Farm Mutual and State Farm Fire for amounts greater than Defendants are entitled to bill based upon the actual medical service rendered, (2) billed State Farm Mutual and State Farm Fire for multiple services during an office visit that should have been billed as one service, and (3) otherwise submitted false and misleading statements in the medical bills, reports, and supporting documentation submitted to State Farm Mutual and State Farm Fire.  Further, the Defendants distributed home medical equipment without the required license.

## Background Facts and Allegations

14.    Defendants focus their practice almost exclusively on providing "emergency medical condition" evaluations and "initial reports" and "final reports" to persons who have been injured in automobile accidents.  Defendants also distribute home medical equipment and durable medical equipment to their patients.

15.    Neither Tamea nor any other healthcare professional at Personal Injury Solutions performs surgeries, prescribes medications, or provides any therapy or ongoing medical treatment to their patients.

16.    Under Tamea's direction and supervision, Personal Injury Solutions has marketed and targeted its evaluation and reporting services to personal injury attorneys by claiming that the value of their clients' automobile negligence claims will be increased if they allow Personal Injury Solutions to evaluate their clients.

17.    For example, and without limitation, Personal Injury Solutions' website has stated that:  (a) Personal Injury Solutions provides orthopedic evaluations that are "completely essential

to establishing a personal injury case"; and (b) "[y]our attorney will use this orthopedic evaluation to represent you to your insurance company…It is necessary to establish that you do have injuries and that they are related to your accident…This can only be done with a proper orthopedic evaluation." The website also previously stated that "[i]t is necessary to establish to what degree these injuries are permanent and to what degree they have healed for treatment…Finally it is necessary to establish what impairments are present as a result of these injuries."

18.    Under Tamea's direction and supervision, Personal Injury Solutions has also marketed and targeted its evaluation and reporting services to chiropractors by promoting their ability to increase the available benefits under PIP coverage from $2,500 to $10,000 pursuant to section 627.736(1)(a)3, Florida Statutes, with findings that the chiropractors' auto-accident patients have an "emergency medical condition" as defined by section 627.732(16), Florida Statutes.[1]

19.    Personal Injury Solutions has billed State Farm Mutual and State Farm Fire for evaluation and examination services allegedly rendered to certain of their insureds who had PIP coverage and/or medical payments coverage ("MedPay") under certain auto insurance policies with State Farm Mutual or with State Farm Fire (the "Subject Claims"). A chart identifying each person insured by State Farm Mutual or by State Farm Fire by his or her initials and the applicable claim number, and setting forth the date of loss, the amount billed by Defendants, and the amount of the payments made by State Farm Mutual and by State Farm Fire, is attached

---

[1] Specifically, Section 627.736(1)(a)3, Florida Statutes, provides that a person's available PIP benefits are limited to $2,500.00 per incident unless a qualified medical provider finds that the person is suffering from an "emergency medical condition," which is defined by section 627.732(16), Florida Statutes. If a medical doctor determines that an "emergency medical condition" exists then the full $10,000.00 in benefits are available. In this action, State Farm Mutual and State Farm Fire are not alleging wrongdoing pursuant to Section 627.736(1)(a)(3) or seeking to recover damages pursuant to that section.

hereto as Exhibit "A." Further, a chart identifying each person insured by State Farm Mutual or by State Farm Fire by his or her initials and the applicable partially redacted claim number, and setting forth the date of loss, and the amount billed by Defendants on pending or unpaid claims is attached hereto as Exhibit "B."

20.    Before providing any treatment or services to the insureds identified in Exhibits "A" and "B," Personal Injury Solutions required them to execute a purported assignment of PIP and MedPay benefits so that Tamea could cause Personal Injury Solutions to issue bills to, and seek to receive payments, directly from State Farm Mutual or State Farm Fire for Personal Injury Solutions' services.

21.    In providing the alleged services that are the subject of the billed charges set forth in Exhibits "A" and "B," Tamea, or often times a nurse or assistant, performed only a brief or cursory physical examination of the insureds (if any examination was performed at all), asked only a few questions, went over the insureds' MRIs, and had a short discussion about the insureds' injuries and treatment.

22.    In regard to some insureds, Tamea (1) did not perform the tests he claimed to have performed in his report, (2) did not even see the insureds during an alleged office visit, (3) did not do the medical counselling as stated in his report, (4) did not make any medical decisions, or (5) did not do any kind of hands-on examination at all.

23.    Tamea then caused Personal Injury Solutions to prepare "reports" and other supporting documentation that were submitted to State Farm Mutual or State Farm Fire along with Personal Injury Solutions' bill(s) and supporting documentation for alleged treatment of the insureds.

24.    Pursuant to section 627.736(5)(d), Florida Statutes, the medical bills and

supporting documentation Personal Injury Solutions issued to State Farm Mutual and State Farm Fire for the services it allegedly provided to the insureds were required to comply with the Physician's Current Procedural Terminology ("CPT"), the Healthcare Correct Procedural Coding System ("HCPCS"), the 1997 Documentation Guidelines for Evaluation and Management Services, and all related instructions and directives in effect for the year in which the services were rendered to the insureds.

25.    In this regard, there are five potential CPT codes that can be used to bill for an "initial" office visit (99201, 99202, 99203, 99204 or 99205). The 99205 CPT code is only supposed to be used when the new patient office visit is of the highest complexity. There are very specific standards that must be met to properly bill the highest level initial office visit code. Pursuant to the 1997 Documentation Guidelines for Evaluation and Management Services, a 99205 exam falls under the "Office or Other Outpatient Services" for new patients in the Evaluation and Management section of the CPT Code Book, and is described as follows:

"Office or other outpatient visit for the evaluation and management of a new patient, which requires these 3 components:

- A comprehensive history;
- A comprehensive examination;
- Medical decision making of high complexity.

Counseling and/or coordination of care with other physicians, other qualified health care professionals, or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs.

Usually, the presenting problem(s) are of moderate to high severity. Typically, 60 minutes are spent face-to-face with the patient and/or family."

26.    Similarly, there are five potential CPT codes that can be used to bill for a follow-up office visit (99211, 99212, 99213, 99214 or 99215). The 99215 CPT code is only supposed to be used when the follow-up office visit is of the highest complexity. Also, a 99215 exam falls

7

under the "Office or Other Outpatient Services" for established patients in the Evaluation and

Management section of the CPT Code Book, and is described as follows:

> "Office or other outpatient visit for the evaluation and management of an established patient, which requires at least 2 of these 3 components:
>
> - A comprehensive history;
> - A comprehensive examination;
> - Medical decision making of high complexity.
>
> Counseling and/or coordination of care with other physicians, other qualified health care professionals, or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs.
>
> Usually, the presenting problem(s) are of moderate to high severity.  Typically, 40 minutes are spent face-to-face with the patient and/or family."

27.     Pursuant to the 1997 Documentation Guidelines for Evaluation and Management

Services, each evaluation and management service billed by a physician should be based upon

several factors, including, but not limited to, (1) the severity of the patient's injuries, symptoms,

and condition, (2) the patient's medical history and the level of detail required in taking the

patient's medical history, (3) the complexity of the patient's case, (4) the level of document

review required for the physician to determine a diagnosis, (5) the number of potential diagnoses,

(6) the risk of death or significant complications associated with the patient's problems or the

treatment options, and (7) the level of detail required of the examination of the patient.

28.     In billing their alleged services in the Subject Claims, Defendants submitted a

total of 482 claims to State Farm Mutual and State Farm Fire.  In 480 of the 482 claims

submitted to State Farm Mutual or State Farm Fire, Defendants billed the initial evaluation of an

insured using CPT code 99205.

29.     Further, in billing their alleged services in the Subject Claims, when Defendants

purportedly performed one or more follow-up evaluations of an insured, Defendants billed one or

more of the follow-up evaluation(s) using CPT code 99215 in 81 out of 95 claims where follow-up evaluations were purportedly rendered.

30.    In regard to the insureds and the Subject Claims, Defendants billed a 99205 for the first office visit and Tamea would merely provide an emergency medical condition determination and a prepare a boilerplate "initial evaluation."  Defendants would then have the insured come in for a "final evaluation," bill a 99215, and provide a permanent impairment rating, opine as to the need and costs of future medical service, and otherwise provide a boilerplate "opinion" that the insureds' attorneys could use for the purposes negotiating or settling the insureds' personal injury claim.

31.    Tamea's examinations and evaluations of the insureds did not comport with the requirements for Personal Injury Solutions to bill State Farm Mutual and State Farm Fire CPT codes 99205 or 99215 for those services.  Instead of providing the services required to bill CPT codes 99205 or 99215 for the evaluation of the insureds, (1) Tamea did not perform the required "comprehensive examinations" set forth in the bills, reports, and supporting documentation, (2) Tamea spent less than the typical 60 minutes face-to-face with the insureds (or the typical 40 minutes face-to-face with the insureds in the case of a 99215 follow-up office visit), and (3) the treatment or evaluation of the insureds did not involve medical decision making of high complexity.

32.    Tamea caused Personal Injury Solutions to bill State Farm Mutual and State Farm Fire at the highest level evaluation and management ("E/M") CPT codes for Personal Injury Solutions' examinations of the insureds.  Personal Injury Solutions, at the direction and behest of Tamea, with only two exceptions, billed exclusively a 99205 CPT code for initial evaluations in the Subject Claims, and, where one or more follow-up evaluations were performed in those

claims, almost always billed a 99215 CPT code for services allegedly rendered to the insureds.

33.    Tamea knowingly caused Personal Injury Solutions to bill CPT codes 99205 and 99215 to State Farm Mutual or State Farm Fire for its examinations of the insureds without medical justification and in order to inflate the reimbursements from State Farm Mutual and State Farm Fire.  A chart setting forth Personal Injury Solutions' charges of CPT codes 99205 and 99215 in Personal Injury Solutions' examinations of the insureds is attached hereto as Exhibit "C."

34.    Additionally, where an Insured had received an MRI, Tamea caused Personal Injury Solutions to bill one or more MRI review CPT codes (e.g., CPT 72141, 72148) for a second read of the MRI with modifier 26, which represented that the professional component of the service was billed for "interpretation only," and modifier 59, which represented that the same physician performed two related but separate procedures on the same day.

35.    Personal Injury Solutions' billing of MRI review codes separate from the highest level E/M service code in this fashion is false or misleading because a physician's review of an existing MRI is included as part-and-parcel of a Level 5 E/M service. Personal Injury Solutions' improper charges for second reads of the insureds' MRIs are also set forth in the chart attached hereto as Exhibit "C."

36.    Finally, as described herein, Florida law required Personal Injury Solutions to have a "Home Medical Equipment License" issued by the Florida Agency for Healthcare Administration in order to lawfully sell transcutaneous electrical nerve stimulators ("TENS units").

37.    At all times relevant to this action, Personal Injury Solutions did not have a Home Equipment Medical License authorizing it to lawfully sell TENS units under Florida law.

38.    Personal Injury Solutions unlawfully provided TENS Units to certain of the insureds and charged State Farm Mutual and State Farm Fire for the units (HCPCS Code E0730). A chart setting forth the TENS units for which Personal Injury Solutions unlawfully charged State Farm Mutual and State Farm Fire is attached hereto as Exhibit "D."

39.    All conditions precedent to the maintenance of this action have been performed, have occurred, or have been waived.

<b><u>COUNT I – FRAUD</u></b>

40.    State Farm Mutual and State Farm Fire reallege the allegations contained in paragraphs 1 through 39 as though fully set forth herein.

41.    From about 2008 to the present, Personal Injury Solutions, at the direction or behest of Tamea, who signed all of the bills, knowingly and intentionally generated medical bills, reports, and supporting documentation that Defendants sent to State Farm Mutual and State Farm Fire for the purpose of receiving payment for the Subject Claims.

42.    The bills, reports, and supporting documentation prepared by Tamea on behalf of Personal Injury Solutions indicate that the services were rendered at 7226 Williams Drive South, Saint Petersburg, Florida 33705. The bills, reports, and supporting documentation were sent to State Farm Mutual and State Farm Fire at various addresses, including in Atlanta, Georgia.

43.    Each of the bills, reports, and supporting documentation for the alleged services provided to the insureds sent to State Farm Mutual and State Farm Fire by Personal Injury Solutions contained statements of material fact regarding the alleged services rendered, the amount alleged to be due and payable for the services rendered, and the billing codes that were allegedly applicable for the procedures or services that were billed.

44.    Personal Injury Solutions and Tamea, who dictated, prepared, produced, and/or

11

approved the reports and supporting documentation and signed the individual bills, knew the subject bills, reports, and supporting documentation contained material misrepresentations of fact because Defendants knew that the services were not actually rendered, that the amounts billed were improper, upcoded, or were not properly coded, and that the bills contained multiple billing codes for procedures or services that are properly billed under one billing code.

45.    For example, but not by way of limitation, the bills, reports, and supporting documentation submitted to State Farm Mutual and State Farm Fire for the Subject Claims contain materially false or misleading statements including, but not limited to, (1) that a comprehensive, "Level 5" examination was performed by Tamea, (2) that Tamea himself did a face-to-face examination and consultation with the insureds for approximately 60 minutes (or for approximately 40 minutes face-to-face examination and consultation with the insureds in the case of a 99215 follow-up office visit), (3) that Tamea's examination and consultation required medical decision making of high complexity, (4) that Tamea actually performed all of the general, neurological, orthopedic, and musculoskeletal tests contained within his report, (5) that Tamea reviewed extensive and complex medical records, diagnostic tests, or other information, (6) that the number of diagnoses or management options for the patient were extensive, and (7) that the patient presented with a high risk of significant complications, morbidity, or mortality associated with the diagnoses or management options.

46.    The misrepresentations made by the Defendants regarding the subject charges had the effect of inducing State Farm Mutual and State Farm Fire to rely on them to make payments to Defendants under the insureds' PIP coverage in regard to the Subject Claims.

47.    State Farm Mutual relied on Defendants' misrepresentations by paying approximately $194,035.44 in regard to the Subject Claims and suffered damages as a direct or

proximate result of its reliance on Defendants' misrepresentations.

48.     State Farm Fire relied on Defendants' misrepresentations by paying approximately $7,573.76 in regard to the Subject Claims and suffered damages as a direct or proximate result of its reliance on Defendants' misrepresentations.

WHEREFORE, Plaintiff, State Farm Mutual, and Plaintiff, State Farm Fire, respectfully request that this Court enter judgment against Defendants, Personal Injury Solutions and Tamea, award compensatory damages, interest, costs, and provide for such other and further relief the Court deems just and proper.

## COUNT II – UNJUST ENRICHMENT

49.     State Farm Mutual and State Farm Fire reallege the allegations contained in paragraphs 1 through 39 as though fully set forth herein.

50.     Section 627.736(5)(b)1.c., Florida Statutes, provides that an insurer "is not required to pay a claim or charges . . . [t]o any person who knowingly submits a false or misleading statement relating to the claim or charges."

51.     Pursuant to section 627.736(5)(b)1.c., Florida Statutes, and the terms of the subject insurance policies, neither State Farm Mutual nor State Farm Fire were required to pay PIP or MedPay benefits to Personal Injury Solutions for any of the Subject Claims for services allegedly provided to the insureds because Personal Injury Solutions "knowingly" (as defined in section 627.732(10), Florida Statutes) made false or misleading statements relating to the Subject Claims or the charges contained within the Subject Claims.

52.     The knowingly false or misleading statements include, but are not limited to, (1) that a comprehensive, "Level 5" examination was performed by Tamea, (2) that Tamea himself did a face-to-face examination and consultation with the insureds for approximately 60 minutes

(or for approximately 40 minutes in the case of a 99215 follow-up office visit), (3) that Tamea's examination and consultation required medical decision making of high complexity, (4) that Tamea actually performed all of the general, neurological, orthopedic, and musculoskeletal tests contained within his report, (5) that Tamea reviewed extensive and complex medical records, diagnostic tests, or other information, (6) that the number of diagnoses or management options for the patient were extensive, and (7) that the patient presented with a high risk of significant complications, morbidity, or mortality associated with the diagnoses or management options.

53.     Also, pursuant to section 627.736(5)(b)1.b., Florida Statutes, and the terms of the subject insurance policies, neither State Farm Mutual nor State Farm Fire were required to pay PIP or MedPay benefits to Personal Injury Solutions for the services provided to the insureds because those services were not lawfully rendered (as defined in section 627.732(11), Florida Statutes). Specifically, but without limitation, the services or treatments that Personal Injury Solutions and Tamea allegedly rendered to the insureds in regard to the Subject Claims were not in substantial compliance with all relevant, applicable civil and administrative requirements of state and federal law related to the provision of medical services or treatment because Personal Injury Solutions' unbundling and upcoding practices were a violation of sections 817.234(2)(b), 456.072(1)(ee), and 627.736(5)(b)(1), Florida Statutes.

54.     Further, pursuant to section 400.93(1), Florida Statutes, and Florida Rules of Administrative Procedure 59A-25.002 and 59A-25.003(2)(b), Personal Injury Solutions was required to have a "Home Medical Equipment License" issued by the Florida Agency for Healthcare Administration in order to lawfully sell transcutaneous electrical nerve stimulators ("TENS units").

55.     At all times relevant to this action, Personal Injury Solutions did not have a Home

Equipment Medical License authorizing it to lawfully sell TENS units under Florida law.

56.    Personal Injury Solutions unlawfully provided TENS Units to certain of the insureds and charged State Farm Mutual and State Farm Fire for the units (HCPCS Code E0730). A chart setting forth the TENS units for which Personal Injury Solutions unlawfully charged State Farm Mutual and State Farm Fire is attached hereto as Exhibit "D."

57.    In reliance on Personal Injury Solutions' false, misleading, or unlawful charges, services, and sales of TENS Units within certain of the Subject Claims for treatment of the insureds, State Farm Mutual and State Farm Fire conferred a benefit on Personal Injury Solutions and Tamea by paying PIP benefits and MedPay benefits on the Subject Claims that were not owed and which State Farm Mutual and State Farm Fire would not have otherwise paid in the absence of Defendants' wrongful conduct.

58.    In all of the Subject Claims, State Farm Mutual and State Farm Fire did not know that the final medical bills were fraudulently submitted to them for payment.

59.    In all of the Subject Claims, State Farm Mutual and State Farm Fire conferred a benefit upon Defendants by paying the Subject Claims, which resulted in Defendants receiving money from State Farm Mutual and State Farm Fire.

60.    In all of the Subject Claims, State Farm Mutual and State Farm Fire relied upon Defendants' misrepresentations made in the medical bills when paying the Subject Claims.

61.    In paying all of the Subject Claims, State Farm Mutual and State Farm Fire were not acting as volunteers.

62.    Defendants knowingly appreciated the monetary benefits conferred on them by State Farm Mutual and State Farm Fire as a result of Defendants' false and misleading charges for treatment and services purportedly provided to the insureds listed in Exhibit "A."

63.     In all of the Subject Claims, Defendants knowingly accepted and retained State Farm Mutual's and State Farm Fire's payments.

64.     Defendants have not returned any of the payments made by State Farm Mutual or by State Farm Fire on behalf of the insureds.

65.     It would be inequitable to allow Defendants to retain these payments, as Defendants were provided these payments as a result of creating and presenting fraudulent medical bills, reports, and supporting documentation to State Farm Mutual and State Farm Fire.

66.     It would be unjust to allow Defendants to retain the payments made by State Farm Mutual and State Farm Fire on the Subject Claims.

WHEREFORE, Plaintiff, State Farm Mutual, and Plaintiff, State Farm Fire, respectfully request that this Court enter judgment against Defendants, Personal Injury Solutions and Tamea, for compensatory damages, attorneys' fees, interest, costs, and any such other and further relief the Court deems just and proper.

## COUNT III - DECLARATORY JUDGMENT

67.     State Farm Mutual and State Farm Fire reallege the allegations contained in paragraphs 1 through 39 as though fully set forth herein.

68.     This is an action for a declaratory judgment brought pursuant to 28 U.S.C. § 2201 and § 2202, and is within the jurisdiction of this Court. This Court has original jurisdiction over this action because it is between citizens of different states, and the amount in controversy between State Farm Mutual and Defendants exceeds $75,000.00 exclusive of interest, costs, and attorneys' fees. Specifically, (a) State Farm Mutual and State Farm Fire are both Illinois corporations; (b) Defendant, Personal Injury Solutions, is a Florida Limited Liability Company domiciled in Florida; (c) Defendant, Tamea, is an individual residing in Florida; and (d) the

amount in controversy in this action exceeds $190,000.00. Thus, all requirements for this Court to exercise its diversity jurisdiction under 28 U.S.C. § 1332(a)(1) are satisfied.

69.     Additionally, this Court has supplemental jurisdiction over the claims by Plaintiff, State Farm Fire, whose claims exceed $7,000.00, pursuant to 28 U.S.C. § 1367(a).

70.     Personal Injury Solutions, at the direction and behest of Tamea, knowingly billed State Farm Mutual and State Farm Fire for services not rendered, and submitted bills, reports, and supporting documentation to them in regard to certain claims that have not been paid that contained knowingly false or misleading statements as defined by sections 627.736(5)(b)1.c. and 627.732(10), Florida Statutes.  A list of the claims subject to this Count of the Complaint are attached as Exhibit "B" (the "Pending Claims").

71.     The materially false or misleading statements made by Defendants in regard to the Pending Claims include, but are not limited to, (1) that one or more comprehensive "Level 5" examinations were performed by Tamea, (2) that Tamea himself performed one or more face-to-face examinations and consultations with the insureds for the typical amount of time, (3) that Tamea's examinations and consultations required medical decision making of high complexity, (4) that Tamea actually performed all of the general, neurological, orthopedic, and musculoskeletal tests contained within his reports, (5) that Tamea reviewed extensive and complex medical records, diagnostic tests, or other information, (6) that the number of diagnoses or management options for the patient were extensive, and (7) that the patient presented with a high risk of significant complications, morbidity, or mortality associated with the diagnoses or management options.

72.     Defendants have made demands on State Farm Mutual and State Farm Fire, or have otherwise submitted bills to them in regard to the Pending Claims, which are pending and

have not yet been paid.

73.    State Farm Mutual, State Farm Fire, and their insureds are not required to pay any claim or any charges in regard to the Pending Claims (a) for services that were not lawful at the time rendered, or (b) where Defendants knowingly submitted false or misleading statements relating to the Pending Claims.

74.    In completing and knowingly submitting medical bills, reports, and other supporting documentation to State Farm Mutual and State Farm Fire for payment that contained false or misleading statements, such as in regard to the Pending Claims, Defendants caused to be presented false claims and claims for services that were not lawfully rendered.

75.    Pursuant to sections 627.736(5)(b)1.b and c, and 817.234, Florida Statutes, and other Florida law, Defendants' actions have relieved State Farm Mutual, State Farm Fire, and their insureds of any duty or obligation to pay PIP benefits or other compensation for any portion of the bills issued by Defendants for treatment allegedly provided to the insureds, as well as any of the additional bills submitted by Defendants as they become due and owing.

76.    Defendants disagree with and dispute the above described contentions of State Farm Mutual and State Farm Fire.

77.    Based on the above-described dispute between State Farm Mutual, State Farm Fire, and Defendants, State Farm Mutual and State Farm Fire are in doubt as to their rights and obligations based upon their insurance contracts, Chapter 627, Florida Statutes, and Florida law as it relates to their insureds' and their rights and responsibilities concerning payment of the bills and Defendants' Pending Claims for PIP benefits for treatment allegedly provided to the insureds.

78.    An actual controversy of a judicial nature exists between State Farm Mutual, State

18

Farm Fire, and the Defendants involving rights and liabilities under the subject insurance policies and, dependent upon the construction of Florida law, this controversy may be determined by a judgment in this action.

79.     For purposes of this Count of the Complaint, State Farm Mutual and State Farm Fire are in doubt about their rights, status, or equitable or legal relations under the subject insurance policies and Florida law.

80.     State Farm Mutual and State Farm Fire seek a declaration setting forth the rights, status, legal relationship, liabilities, obligations and responsibilities of the parties under the applicable insurance policies and Florida law.

81.     There is a bona fide, actual, and present controversy between State Farm Mutual, and State Farm Fire, and Defendants over the issue of whether State Farm Mutual, State Farm Fire, and their insureds have been relieved of liability for any PIP benefits on the medical bills submitted by Defendants, and for any and all other charges relating to other treatment or services allegedly rendered to the insureds, which have not yet been paid.  This includes all of the Pending Claims and any and all claims, demands, and medical bills not yet submitted by Defendants, including bills that may be submitted during the pendency of this action.

82.     There is a bona fide, actual, present, and practical need for a declaration by this Court to resolve the above-described controversy between State Farm Mutual, State Farm Fire, and Defendants.

83.     The interests of State Farm Mutual, State Farm Fire, and Defendants are adverse, and this is not merely a request for an advisory opinion.

84.     All interested parties are before the Court.

WHEREFORE, Plaintiff, State Farm Mutual, and Plaintiff, State Farm Fire, respectfully request that this Court enter judgment declaring the following:

A.     Any and all claims or medical bills regarding any insureds listed in Exhibit "B" are not due and payable from State Farm Mutual, State Farm Fire, or their insureds.

B.     Any and all claims and medical bills submitted by Defendants to State Farm Mutual and State Farm Fire for services rendered to their insureds during the pendency of this action are not due and payable from State Farm Mutual, State Farm Fire, or their insureds.

C.     State Farm Mutual and State Farm Fire are entitled to other relief, attorneys' fees, costs, interest, and such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), and all other applicable law, Plaintiff, State Farm Mutual, and Plaintiff, State Farm Fire, respectfully demand a trial by jury on all issues so triable.

Dated this 15th day of February, 2017.

/s/ Kendra G. McCan
BART R. VALDES
Florida Bar Number 323380
KENDRA G. McCAN
Florida Bar Number 104785
de Beaubien, Simmons, Knight,
 Mantzaris & Neal, LLP
609 West Horatio Street
Tampa, Florida 33606
Telephone: (813) 251-5825
Facsimile: (813) 254-1063
bvaldes@dsklawgroup.com
kmccan@dsklawgroup.com

KENNETH P. HAZOURI
Florida Bar Number 19800
de Beaubien, Simmons, Knight,
 Mantzaris and Neal, LLP

332 North Magnolia Avenue
Orlando, Florida 32801
Telephone: (407) 422-2454
Facsimile: (407) 849-1845
khazouri@dsklawgroup.com
Attorneys for Plaintiffs